IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 120-052 |
| | ) | |
| JOHN THOMAS BARNES, III | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Defendant seeks suppression of evidence obtained during a traffic stop on March 27, 2020, that led to his arrest on the underlying firearm charge. After careful consideration of the briefs, and evidence presented at the hearing on October 28, 2020, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **GRANTED IN PART** and **DENIED IN PART**. (Doc. no. 19.) While all statements made after Defendant's arrest should be suppressed, as the government concedes, there is no basis for suppression of statements made prior to arrest or physical evidence seized during the vehicle search.

**I.   FACTS**

On August 5, 2020, a grand jury in the Southern District of Georgia charged Defendant with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). (Doc. no. 1.) The traffic stop underlying this charge occurred on March 27, 2020, when Sergeant Julio Concepcion observed Defendant failing to yield while exiting a gas station and speeding on Milledgeville Road. (Doc. nos. 20, p. 2; 22, p. 1; Court's Recording System, *For The Record* ("FTR"), 09:03:08-09:03:23; 09:04:23-09:06:02.) When Sgt. Concepcion activated the emergency lights on his unmarked patrol car, Defendant drove

approximately 0.4 miles at 30 mph before stopping. (FTR, 09:06:06.) While following Defendant and waiting for him to stop, Sgt. Concepcion observed Defendant reach into the back seat of his vehicle. (FTR, 09:06:13-09:07:38.)

Sgt. Concepcion turned on his body camera as he approached Defendant's vehicle. (See Body Camera, doc. no. 28-1, 00:00-00:10.) Sgt. Concepcion asked for Defendant's license and vehicle registration, which Defendant promptly provided. Id. Sgt. Concepcion testified, "When I initially made contact with [Defendant] I could smell the odor of marijuana coming from the vehicle," but he did not mention the odor until later in the stop. (FTR, 09:23:07-09:23:20.) Sgt. Concepcion asked why Defendant sped out of the gas station, and Defendant explained he was trying to maneuver around a car that was blocking him. (See Body Camera, 00:14-00:37.) Sgt. Concepcion asked whether there was "anything in the car [he] need[ed] to know about," and specifically asked about "drugs or firearms". (Id., 00:38-00:49.) Defendant replied no, except for liquor he just purchased. (Id.)

Still holding Defendant's license and registration, Sgt. Concepcion asked, "You got a problem with me looking?" (Id., 00:49-00:51.) Defendant responded, "I mean . . . I ain't got a problem with you looking, but uh, I trying to figure out why you'd want to look, sir, you pulled me over for, for speeding, Sir." (Id., 00:51-01:02.) Sgt. Concepcion stated, "[I]t's your right." (Id., 01:03.) Defendant replied, "Sir?," appearing to not hear what Sgt. Concepcion said, however, Sgt. Concepcion's radio communication interrupted their conversation. (Id., 01:04-01:29.) At no point after this exchange are any statements made affirming or revoking consent, further clarifying Defendant's rights, or seeking additional permission to search.

2

As Defendant made a call on his cell phone, Sgt. Concepcion asked Defendant, "Do you smoke marijuana?" (Id., 01:45.) Defendant replied, "Sir?" (Id.) Sgt. Concepcion again asked, "Do you smoke marijuana? Just a little bit?" (Id., 01:48.) Defendant replied, "Do I smoke marijuana?" (Id.) For a third time, Sgt. Concepcion asked, "Do you smoke marijuana? I'm asking." (Id., 01:51.) As Defendant started, "I mean-," Sgt. Concepcion interrupted, "Do you smoke in this vehicle?" (Id.) Defendant stated, "No, sir, I can't. Cause it, it's- I just got the vehicle from uh, Augusta Mitsubishi." (Id.) Sgt. Concepcion again asked, "Do you smoke is what I'm asking." (Id., 02:04.) Defendant replied, "No, sir," as he began talking on his cell phone. (Id.) Sgt. Concepcion again asked, "Do you smoke, marijuana?" (Id., 02:13.) Defendant again replied, "No, sir." Sgt. Concepcion asked a final time, "Has anyone smoked in this vehicle?" (Id., 02:15.) Defendant replied, "No, sir. No. No, sir. No, sir." (Id.) Sgt. Concepcion asked "Ok, are you on probation or parole?" (Id., 02:24.) Defendant responded, "I'm, uh, no, not- I was on, yeah, yeah, yeah, yes, sir. It ain't- it ain't terminated yet." (Id., 02:26.)

Narcotics Investigators Calvin Swann and Kyle Gould arrived, and Sgt. Concepcion instructed Defendant to step out of the vehicle and place his hands on top of the car. (Id., 02:34-02:46.) While Sgt. Concepcion performed a pat-down search, Investigator Gould asked Defendant, "[Y]ou got any weapons in here?" followed by, "[Y]ou got any weed or anything like that in here?" (Id., 02:46-03:14.) Sgt. Concepcion announced, "I smell weed." (Id. 03:14.) Investigator Gould instructed Defendant to "step to the back" and asked again, "[Y]ou got any weed in here, I'm going to check it that's why I'm asking, you got any weed in here? You might as well be straight man." (Id., 03:40-03:47.) Defendant admitted,

3

"[Y]es, sir.  Look right here, sir," while he gestured to the rear passenger side of the vehicle. (Id., 03:47-03:52.)  Sgt. Concepcion replied, "[W]ait, we'll get it. How much weed you got?" (Id.)  Defendant replied, "It was a piece of a blunt that I had been smoking on.  Look in the back seat, sir."  Sgt. Concepcion asked Defendant to step aside while Investigators Gould and Swann searched the vehicle.  (Id. 03:52 to 04:04.)

Defendant informed Investigator Gould and Sgt. Concepcion the blunt was in a jar located in the back of the vehicle.  Investigator Gould placed the jar on top of the vehicle, to which Defendant responded, "[T]hat's what I had right there.  If you look in the jar, right there, you'll see, a half a- I'm saying you can look, sir."  (Id., 03:52 to 04:04.)  The jar contained a marijuana cigar.  (Doc. no. 20-2, p. 2.)  Defendant stated the marijuana cigar was the only thing in his possession, however, Investigator Gould and Sgt. Concepcion continued to search.  (Body Camera, 03:52 to 04:04.)  Shortly thereafter, Sgt. Concepcion handcuffed Defendant, and Investigator Gould informed Defendant they found a gun.  (Id., 03:52 to 06:11.)  Investigator Gould removed a child seat from the vehicle and pulled a loaded handgun out of the child seat.  (Id., 03:52 to 04:04).  A database search revealed the firearm was reported as stolen on January 18, 2019.  (Doc. no. 20-2, p. 4.)

More than two years before the traffic stop, on August 24, 2017, Defendant pled guilty to a felon in possession of a firearm charge, and Richmond County Superior Court Judge Michael N. Annis sentenced Defendant to one year of imprisonment followed by four years of probation.  (Doc. no. 22-2.)  Defendant and Judge Annis signed an acknowledgement of the plea agreement and special conditions of probation, which included the following Fourth Amendment waiver and consent to search condition:

4

>I understand that this special condition of probation requires that I consent to any and all searches of my person and my property at any time during the entire time that I am on probation.
>
>I hereby consent to any and all searches of my person and my property, including my motor vehicle, my residence, and the immediate area around me upon request by law enforcement. I understand that law enforcement includes not only federal, state, county, and municipal law enforcement personnel, but also includes probation and parole officers. I also understand that I shall submit to any and all searches of my person and my property with or without probable cause, with or without a search warrant, and at any time of the day or the night.
>
>I understand that I may not withdraw my consent during the time that I am on probation in this case. I understand that while I am on probation, even if I do not consent to a requested search, law enforcement personnel may search my person and my property anyway. I also understand that if I attempt to revoke my consent at any time, my attempt to revoke my consent may be a violation of the terms of my probation.

(Id. at 9.)

## II.   DISCUSSION

Conceding Sgt. Concepcion had sufficient cause to initiate the traffic stop, Defendant argues the warrantless search of his vehicle violated the Fourth Amendment because the officers impermissibly prolonged the traffic stop to conduct a fishing expedition for any unlawful conduct. (Doc. nos. 20, 25.) The government argues the search was constitutional because (1) Defendant, as a state probationer with a search condition, had a diminished expectation of privacy that subjected him to warrantless searches based on reasonable suspicion; (2) officers had not only reasonable suspicion but also probable cause to search the vehicle because of the marijuana odor and Defendant's suspicious behavior during the traffic stop; and (3) Defendant consented to the search when asked by Sgt. Concepcion. Suppression of evidence obtained during the vehicle search is not warranted because, as

explained below, probable cause existed to search the vehicle and, even in the absence of probable cause, reasonable suspicion existed and was sufficient in light of Defendant's probationer status. Whether Defendant consented to the search when asked by Sgt. Concepcion is a murkier issue the Court need not address.

Defendant further argues the statements he made during the traffic stop should be suppressed because the officers failed to Mirandize him. (Doc. no. 20.) The government concedes statements made after Defendant's arrest are inadmissible because Sgt. Concepcion failed to Mirandize him, but the government contends statements made prior to Defendant's arrest are admissible because Defendant was not in custody. Only the statements made by Defendant after his arrest should be suppressed, for the reasons explained below.

### A. Probable Cause Supports the Vehicle Search

The Fourth Amendment generally requires the police to secure a warrant before conducting a search. California v. Carney, 471 U.S. 386, 390-91 (1985). "However, if a vehicle is readily mobile and there is probable cause to believe that it contains contraband law enforcement may search the vehicle without a warrant." United States v. Rodriguez, 762 F. App'x 938, 942 (11th Cir. 2019) (citing United States v. Baldwin, 774 F.3d 711, 720 (11th Cir. 2014)). The odor of marijuana by itself establishes probable cause for a warrantless search of a vehicle. See, e.g., United States v. Flippo, 759 F. App'x 907, 909 (11th Cir. 2019) (finding odor of marijuana provides probable cause for warrantless search); United States v. Tobin, 923 F.2d at 1512 (11th Cir. 1991) (same); United States v. Cartwright, 183 F. Supp. 3d 1348, 1355 (M.D. Ga. 2016) (same).

6

Sgt. Concepcion testified he smelled marijuana emanating from Defendant's vehicle when he first approached Defendant's door and began speaking with Defendant. If the Court determines Sgt. Concepcion smelled marijuana at this early stage, then Sgt. Concepcion had probable cause to search the vehicle.

The threshold issue relates to credibility. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002)); see also United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (recognizing credibility determinations are within province of factfinder); Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004) (recognizing court's opportunity to observe and study witnesses to make credibility determination concerning testimony). In making its credibility determination, the Court must take into consideration not only the interests of the witness, but also "the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand." Ramirez-Chilel, 289 F.3d at 749, 750 (citation omitted).

The Court credits the testimony of Sgt. Concepcion, who is a seasoned officer in the narcotics division with hundreds of hours in narcotics training and almost a decade of experience in narcotics. At the hearing, Sgt. Concepcion's testimony was internally consistent and logically sound, and remained so during cross-examination. Sgt. Conception recounted his interactions with Defendant in a detailed and methodical manner, referring to

his records when necessary. Sgt. Concepcion testified consistently he smelled marijuana upon initial contact with Defendant's vehicle.

Not only was Investigator Concepcion's testimony credible and convincing, but strong circumstantial evidence supports his testimony that Defendant's car smelled like marijuana. Indeed, the officers found a partially burned marijuana cigar in the back seat area of the car, the same area where Sgt. Concepcion observed Defendant moving his arms before pulling his car over to the side of the road. Furthermore, Defendant admitted to the officers the cigar "was a piece of a blunt that I had been smoking on. Look in the back seat, sir." (Body Camera, 03:52 to 04:04). Given these facts, it is hardly surprising Defendant's car smelled like marijuana.

Defendant makes much of the fact Sgt. Concepcion did not announce that he smelled marijuana until Investigator Gould and arrived and Defendant stepped out of his vehicle. That he chose to conceal this fact until backup arrived is too thin of a basis to reject Sgt. Concepcion's unequivocal and credible testimony he smelled marijuana from the moment he first approached the vehicle and engaged Defendant in conversation. Indeed, Sgt. Concepcion made this announcement while walking near the rear of Defendant's car, and it is clear the intent is to inform his fellow officers of a fact he previously discovered rather than to make a present sense impression.

These important facts concerning Sgt. Concepcion's first detection of the marijuana odor eviscerate Defendant's argument that Sgt. Concepcion impermissibly extended the scope and length of the stop in violation of Rodriguez v. United States, 575 U.S. 348 (2015) and United States v. Campbell, 912 F.3d 1340 (11th Cir. 2019). On the contrary, these

decisions confirm an officer may extend a traffic stop and broaden the scope of inquiry when there is reasonable suspicion of a crime other than the traffic crime that was the reason for the stop in the first instance.  See Campbell 912 F.3d at 1353 (citing Rodriguez 575 U.S. at 354) (finding "a stop is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes).  Sgt. Concepcion's detection of the marijuana odor exceeds this baseline standard of reasonable suspicion and constitutes probable cause.

Defendant retorts that, if in fact Sgt. Concepcion discovered the marijuana odor early in the traffic stop, he should have begun the search immediately rather than waiting for the arrival of Investigator Gould, citing no caselaw in support.  The Court disagrees.  See United Sates v. Anguiano, 791 F. App'x 841, 849 (11th Cir. 2019) (finding as reasonable officer's decision to await backup before searching vehicle).

For these reasons, Sgt. Concepcion did not violate Defendant's Fourth Amendment rights by extending the traffic stop and conducting a search of Defendant's vehicle, and all evidence seized as a result of the vehicle search should not be suppressed.

**B.      Even if Probable Cause Were Lacking, Which It Was Not, Defendant's Status as a Probationer Diminished His Expectation of Privacy and Allowed A Warrantless Search Based on Reasonable Suspicion**

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.  The Fourth Amendment generally requires a search

9

warrant with probable cause to perform a search, and searches conducted without a search warrant are considered "per se unreasonable under the Fourth Amendment [and are] subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Therefore, courts "'examine the totality of the circumstances' to determine whether a search is reasonable within the meaning of the Fourth Amendment." Samson v. California, 547 U.S. 843, 848 (2006) (quoting United States v. Knights, 534 U.S. 112, 118-19 (2001)). This is because "[t]he touchstone of the Fourth Amendment is reasonableness," determined by "assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Knights, 534 U.S. at 118-19 (internal quotation marks and citations omitted).

Although the Fourth Amendment's protection against unreasonable searches and seizures applies to probationers like Defendant, they "may be subject to restrictions that diminish [their] reasonable expectations of privacy," such as conditions of probation allowing warrantless searches. United States v. Boynton, 337 F. App'x 801, 803 (11th Cir. 2009); Owens v. Kelley, 681 F.2d 1362, 1367 (11th Cir. 1982). "Such limitations are permitted because probationers have been convicted of crimes and have thereby given the state a compelling interest in limiting their liberty in order to effectuate their rehabilitation and to protect society." Owens, 681 F.2d at 1367. To determine whether a warrantless search based on reasonable suspicion is constitutional, courts consider the totality of the circumstances and balance the intrusion of the search on a probationer's privacy against the governmental interests of rehabilitation and protection of society. See Knights, 534 U.S. at

10

118-19 (holding warrantless search of probationer's apartment reasonable because of probationary status and search condition).

"[T]he presence of a search condition is but one 'salient circumstance' to consider." United States v. Yuknavich, 419 F.3d 1302, 1309 (11th Cir. 2005) (quoting Knights, 534 U.S. at 118). There is considerable government interest in supervising probationers because they are more likely to violate the law and more likely to destroy incriminating evidence, given their knowledge that proof beyond a reasonable doubt and the right to jury trial do not apply at probation revocation hearings. Id.; Knights, 534 U.S. at 120. Courts consider the specific circumstances of each case, not just the presence or absence of a search condition, in determining the extent of diminution to a probationer's privacy interest.

Here, the undisputed facts show Defendant's expectation of privacy was diminished such that officers only needed reasonable suspicion of a crime. Defendant was on a probated five-year sentence for the serious felony offense of possession of a firearm by a convicted felon. As part of his plea, Defendant agreed to terms of probation that included a warrantless search condition. He also agreed to presumptively consent to all searches of his person, property, and vehicle during his probationary term.

Precedent confirms Defendant, as a direct consequence of these prior actions and decisions, diminished his privacy rights to such a degree his vehicle could be searched without a warrant based on reasonable suspicion. See, e.g., Yuknavich, 419 F.3d at 1308-11 (upholding warrantless search for child pornography because defendant committed prior probation violation, search was relevant to underlying conviction, and other conditions of probation regulated computer use); United States v. Carter, 566 F.3d 970, 973-75 (11th Cir.

2009) (upholding search despite absence of search condition in part because of condition requiring defendant to "submit to visits by the probation officer at his home, workplace, or elsewhere"); United States v. Denton, No. CR 111-546, 2012 WL 3871929, at *6-10 (N.D. Ga. June 19, 2012), *adopted by*, 2012 WL 3871927 (N.D. Ga. Sept. 5, 2012) (upholding warrantless search because of probationary status, search condition, and confession to violating conditions in polygraph test); United States v. Linder, No. CR 319-003, 2019 WL 3560520, at *3-5 (S.D. Ga. June 21, 2019), *adopted by*, 2019 WL 3554668, *appeal docketed*, No. 20-14004 (11th Cir. Oct. 27, 2020) (upholding warrantless search without consent because of probationary status and search conditions).

Citing no legal authority, Defendant argues there is no valid Fourth Amendment waiver because Sgt. Concepcion did not have advance knowledge of the probation conditions, and consent to search was not requested as the waiver allegedly requires. (Doc. no. 22, pp. 1-2.) These arguments miss the mark because the inquiry concerns Defendant's state of mind, not the officer's knowledge of the probation conditions or compliance with its terms. As courts have previously explained, "[T]he issue is not whether [defendant] waived his Fourth Amendment rights, but whether the Search and Seizure provision that was a condition of his probation and of which [defendant] was aware, diminished his expectation of privacy sufficiently to render a search based only on reasonable suspicion lawful under the Fourth Amendment . . . ." Denton, 2012 WL 3871929, at *7; see also Yuknavich, 419 F.3d at 1308-11 (finding diminished expectation of privacy despite absence of search condition); Carter, 566 F.3d at 973-75 (finding submission to home visits condition reduced expectation of privacy).

Because of Defendant's diminished privacy expectations, the officers needed only reasonable suspicion to conduct the vehicle search. The Supreme Court in Knights defined reasonable suspicion as "a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." 534 U.S. at 121 (citation omitted). "When making a determination of reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." Yuknavich, 419 F.3d at 1311 (quoting United States v. Perkins, 348 F.3d 965, 970 (11th Cir. 2003)). The officer must "'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id. (internal quotation marks and citations omitted). Here, reasonable suspicion existed at the time of the vehicle search for the same reasons cited above in support of the probable cause finding. See, e.g., United States v. White, 593 F.3d 1199, 1203 (11th Cir. 2010) (finding "smell of marijuana alone may provide a basis for reasonable suspicion").

### C. The Court Should Suppress All of Defendant's Post-Arrest Statements But Not His Pre-Arrest Statements

The government concedes all statements made after Defendant's arrest are inadmissible because Sgt. Concepcion failed to Mirandize Defendant. All statements made before Defendant's arrest should not be suppressed because Defendant was not in custody. "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. Amend. V. "To give force to the Constitution's protection against compelled self-incrimination, the Court established in Miranda, 'certain procedural safeguards that

require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'" Florida v. Powell, 559 U.S. 50, 59 (2010) (quoting Duckworth v. Eagan, 492 U.S. 195, 201 (1989)).  Under Miranda, prior to conducting a custodial interrogation, law enforcement officers must warn the interview subject that he has a "right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda v. Arizona, 384 U.S. 436, 444 (1966).

The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.  When analyzing whether Miranda warnings are required, the Court must decide whether "under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that degree associated with a formal arrest to such extent that he would not feel free to leave." United States v. Paige, 241 F. App'x 620, 622 (11th Cir. 2007) (*per curiam*) (citing United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000) (*per curiam*) (citation omitted)).  "The test is objective:  the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996). The objective standard contemplates the perspective of a reasonable, innocent person.  Paige, 241 F. App'x at 622.  Factors to consider include whether "the officers brandished weapons, touched the suspect, or used language or a tone that indicated compliance with the officer could be compelled." United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006).

14

Seizure, however, does not automatically equal custody for Miranda purposes. Id. at 1309-10. A person is "seized" when "a reasonable person would not feel free to terminate the encounter" with the police. Id. at 1310. For Miranda purposes, a person is in custody "only when there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Id. (citation omitted); see also United States v. Luna-Encinas, 603 F.3d 876, 881 (11th Cir. 2010) (explaining reasonable person feeling constrained not to leave scene of police encounter at particular moment "may be deemed 'seized' by law enforcement . . . [but] not necessarily be considered in 'custody' for Fifth Amendment purposes.").

Carefully weighing these considerations, the Court finds Defendant was seized but not in custody during all stages of the traffic stop preceding his handcuffing and arrest. The encounter began as a mere traffic stop. The only verbal commands given to Defendant before his arrest were couched in the form of requests, with Sgt. Concepcion asking Defendant to step out of the vehicle and move to the rear of the vehicle. Other than Sgt. Concepcion's pat-down search of Defendant, the officers did not touch Defendant prior to his arrest. Defendant was cooperative. The entire encounter was calm, cordial, and devoid of any threats, raised voices, or course language. Officers ensured Defendant he could observe the search and never said or implied Defendant was under arrest or not free to leave. Defendant never asked to leave, terminate the conversation with officers, or speak with an attorney. No officer drew a gun or any weapon, and the only limitations concerning Defendant's movements were for the sole purpose of providing space for officers during the search. Defendant talked on his cell phone throughout most of the encounter, and Defendant

15

voluntarily made statements to the officers.  While a reasonable person would not have felt free to terminate this encounter, no reasonable person in Defendant's position would have felt a restraint on his freedom of movement to a degree associated with a formal arrest.

For these reasons, and having considered the totality of the circumstances, the Court finds that Defendant was not in custody prior to being handcuffed, and thus Miranda warnings were not required.  See United States v. Mendez-Bernal, Case No: 3:19-cr-0010, 2020 WL 6495109 at *15 (N.D. Ga. July 22, 2020) (finding defendant not in custody while on interstate shoulder during vehicle search); United States v. Hernandez-Hernandez, Case No: 2:15-cr-59, 2015 WL 13741204, at *13 (M.D. Fla. Oct. 29, 2015), *adopted by* 2015 WL 9450849, at *6 (M.D. Fla. Dec. 28, 2015), *aff'd*, 689 F. App'x 907 (11th Cir. 2017) (per curiam) (unpublished) (internal citation omitted) (finding defendant's roadside statements not made in custody during vehicle search despite officer's unannounced plan to arrest). For the same reasons, the Court further finds the government has proved by preponderance of the evidence that Defendant's pre-arrest statements were entirely voluntary.  Lego v. Twomey, 404 U.S. 477, 489 (1972) (applying preponderance of evidence test for voluntariness inquiry); United States v. Grimes, 142 F.3d 1342, 1350 (11th Cir. 1998) (same).

Defendant points to Sgt. Concepcion's hearing testimony that he would not have permitted Defendant to leave the scene before completion of the vehicle search.  Defendant further testified by affidavit as follows: "Affiant states that he was then told by the officer to exit the vehicle and handcuffs were placed on him.  Affiant states that he believed he was detained and not free to continue on his journey." (Doc. no. 21, ¶ 7.)  Defendant's affidavit testimony is belied by the videotape, which shows he was not arrested immediately upon

exiting his vehicle. More importantly, the subjective beliefs of Defendant and Sgt. Concepcion are irrelevant to the custody analysis because "[t]he test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." Moya, 74 F.3d at 1119.

Accordingly, there is no basis for suppression of Defendant's statements made prior his arrest. Only statements made after his arrest should be suppressed, consistent with the government's concession.

### III. CONCLUSION

The Court **REPORTS** and **RECOMMENDS** Defendant's motions to suppress be **GRANTED IN PART** and **DENIED IN PART**. (Doc. no. 19.) While all statements made after Defendant's arrest should be suppressed, as the government concedes, there is no basis for suppression of statements made prior to arrest or physical evidence seized during the vehicle search.

SO REPORTED and RECOMMENDED this 25th day of November, 2020, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA